UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ALLEN MOREAU, ET AL.                                CIVIL ACTION

v.                                                  NO. 17-994

WESTON SOLUTIONS, INC.                              SECTION "F"

ORDER AND REASONS

Before the Court is the plaintiffs' motion to remand. For the reasons that follow, the motion is GRANTED.

**Background**

This litigation arises from personal injuries allegedly suffered as a result of occupational exposure to *Pseudomonas aeruginosa* while the plaintiff worked aboard a vessel in the aftermath of the BP oil spill.

After the BP Deepwater Horizon explosion and resulting oil spill in April 2010, the United States Environmental Protection Agency (EPA), contracted with Weston Solutions, Inc. to conduct scientific testing to analyze the extent of natural resource injuries and determine the restoration actions needed in the Gulf of Mexico. Because Weston did not have its own vessel, and lacked

1

knowledge of the local waterways, it contracted with Native Adventures LLC, owned by Allen Moreau, which provided an unnamed vessel. Moreau alleges that he worked as a crewmember of the vessel, and operated the vessel for Weston from May 2010 until December 2010. Moreau alleges that his duties included piloting and maintaining the vessel.

Moreau first learned that he was infected with the bacteria, *Pseudomonas aeruginosa*, on December 15, 2015. Moreau alleges that he became infected with the bacteria while working for Weston on the vessel, and that Weston should have known that the bacteria was present on the vessel.

On December 12, 2016, Allen Moreau and his wife, Tammy, filed suit in this Court, alleging Moreau contracted a bacterial infection while working for Weston. Moreau alleged he was a Jones Act seaman, that Weston was negligent in failing to adopt adequate safety measures to protect him from infection, that the vessel was unseaworthy, and that he is entitled to maintenance and cure. Mr. Moreau seeks compensatory and punitive damages. His wife, Tammy, seeks loss of consortium damages. Two days after filing in this Court, on December 14, 2016, the plaintiffs filed suit in the Civil District Court of Orleans Parish, making the same allegations. The case pending in this Court was voluntarily dismissed a few weeks later.

On February 3, 2017, the defendants removed the case to this Court. On March 7, 2017, the plaintiffs moved to remand, without citing a single legal authority; after the case was transferred to this Court the motion was denied without prejudice. See Order and Reasons dated 5/5/17. The plaintiffs now move for a second time to remand this case to Civil District Court in Orleans Parish.

I.

A.

Although plaintiff challenges removal in this case, the removing defendants carry the burden of showing the propriety of this Court's removal jurisdiction. See Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002); see also Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir. 1993). Remand is proper if at any time the Court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). Given the significant federalism concerns implicated by removal, the removal statute is strictly construed "and any doubt about the propriety of removal must be resolved in favor of remand." Gutierrez v. Flores, 543 F.3d 248, 251 (5th Cir. 2008)(citation omitted); Gasch v. Hartford Accident & Indem. Co., 491 F.3d 278, 281-82 (5th Cir. 2007)(citations omitted).

*B.*

Federal courts are courts of limited jurisdiction, possessing only the authority granted by the United States Constitution and conferred by the United States Congress. Howery v. Allstate Ins. Co., 243 F.3d 912, 916 (5th Cir. 2001). A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the case -- that is, if the plaintiff could have brought the action in federal court from the outset. See 28 U.S.C. § 1441(a). Suits not brought under federal law "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2); Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd., 818 F.3d 193, 199 (5th Cir. 2016)("when a properly joined defendant is a resident of the same state as the plaintiff, removal is improper."). To determine whether it has jurisdiction, the Court must consider the allegations in the state court petition as they existed at the time of removal. See Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002) (citing Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995)).

4

II.

A.

The defendant asserts that this case is removable because Mr. Moreau fraudulently pleaded his Jones Act claim. It further argues that this Court has subject matter jurisdiction based on the federal officer removal statute. The plaintiffs counter that Mr. Moreau is a Jones Act seaman and that the federal officer removal statute does not apply to Weston.

It is generally accepted that Jones Act cases are not removable. Burchett v. Cargill, Inc., 48 F.3d 173, 175 (5th Cir. 1995); 46 U.S.C. § 30104 (incorporating general provisions of the Federal Employers' Liability Act, including 28 U.S.C. § 1445(a), which bars removal). However, a fraudulently pleaded Jones Act claim does not bar removal. Burchett, 48 F.3d at 175. To determine whether a Jones Act claim was fraudulently pleaded, the district court may employ a "summary judgement-like procedure," but must avoid pre-trying the case to determine removal jurisdiction. Hufnagel v. Omega Serv. Indus., Inc., 182 F.3d 340, 345 (5th Cir. 1999). The defendant's burden is a heavy one: the Court "may deny remand where, but only where, resolving all disputed facts and ambiguities in current substantive law in the plaintiff's favor, the court determines that the plaintiff has no reasonable

possibility of establishing a Jones Act claim on the merits." Id. at 345-46 (citing Burchett, 48 F.3d at 176).

The Supreme Court created a two part test to determine seaman status. First, "an employee's duties must contribut[e] to the function of the vessel or to the accomplishment of its mission." Chandris, Inc. v. Latsis, 515 U.S. 347, 368 (1995). Second, a seaman must have a connection to a vessel in navigation that is substantial in terms of both its duration and its nature. Id.

An employer-employee relationship is a necessary prerequisite for recovery under the Jones Act. Spinks v. Chevron Oil Co., 507 F.2d 216, 224 (5th Cir. 1975), overruled on other grounds by, Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 339 (5th Cir. 1997). A Jones Act employer need not be the owner or operator of the vessel. Guidry v. S. Louisiana Contractors, Inc., 614 F.2d 447, 452 (5th Cir. 1980). It is possible for a seaman to have more than one Jones Act employer. Id. A third person who borrows a worker may be his employer under the borrowed servant doctrine, if the borrowing employer assumes enough control over the worker. Id. "The factor of control is perhaps the most universally accepted standard for establishing an employer-employee relationship." Ruiz v. Shell Oil Co., 413 F.2d 310, 312 (5th Cir. 1969). Other factors informing this inquiry include:

> the furnishing by the temporary employer of the necessary instruments and the place for performance of the work in question, employment of the servant over a considerable length of time, the fact that work being performed is that of the temporary employer, and the customary right to discharge the servant and the obligation for payment of his wages.

Id. at 313 (internal citations omitted).

B.

The federal officer removal statute allows for removal of claims brought in state court against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a). The removal statute also applies to "private persons and corporate entities who lawfully assist the federal officer in the performance of his official duty." Savoie v. Huntington Ingalls, Inc., 817 F.3d 457, 461 (5th Cir. 2016)(citations and quotations omitted). To be covered by the statute, a defendant must show that: (1) it is a person within the meaning of the statute, (2) it has "a colorable federal defense," (3) it "acted pursuant to a federal officer's directions," and (4) "a causal nexus exists between [its] actions under color of federal office and the plaintiff's claims." Zeringue

v. Crane Co., 846 F.3d 785, 789 (5th Cir. 2017)(citations omitted). The defendant bears the burden of proof. Savoie, 817 F.3d at 462. When applying the federal officer removal statute, the Court does not resolve any doubts in favor of remand. Id. (Whether the federal officer removal statute is implicated is reviewed "without a thumb on the remand side of the scale").

### III.
#### A.

Weston contends that Mr. Moreau has fraudulently pleaded his Jones Act claim.[1] The plaintiffs counter that Mr. Moreau has a reasonable possibility of establishing a Jones Act claim. The Court agrees.

Weston has not carried its heavy burden to show that Mr. Moreau "has no reasonable possibility of establishing a Jones Act claim." See Hufnagel, 182 F.3d at 345 (citing Burchett, 48 F.3d at

---

[1] The defendant points out that the plaintiffs originally invoked this Court's jurisdiction before filing this lawsuit that was removed here.  The defendant seems to imply that the plaintiffs should be estopped from arguing that Mr. Moreau's Jones Act claim is not removable because the plaintiffs originally filed this Jones Act lawsuit here. However, one can neither confer nor waive jurisdiction, Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982), and defendant offers no legal authority that persuades the Court that the plaintiffs' jurisdictional arguments have been waived. To be sure, counsel may be dissuaded from forum shopping on pain of sanctions.

176). It is undisputed that Moreau's duties contributed to the vessel's mission of conducting scientific testing, and he had a connection to a vessel that was substantial in its duration and nature. See Chandris, 515 U.S. at 368.  More importantly, Mr. Moreau submits evidence that there is a "reasonable possibility" that Weston is his Jones Act employer.[2] The most important factor in determining if an employer-employee relationship exists is the level of control exerted by Weston over Moreau. Ruiz, 413 F.2d at 312.  Here, Moreau alleges that he worked as a "crewmember" and his duties included piloting and maintaining the vessel. As Weston acknowledges, it directed Mr. Moreau to navigate the vessel to specific coordinates. This is a level of control that goes beyond "mere suggestion." Id. at 313. There is no suggestion or evidence that Moreau had any input in the coordinates or that if Moreau wished to navigate to other coordinates it would have been acceptable. Moreau's duty was to take Weston's orders-to navigate to particular coordinates designated by Weston.  As additional indicia of Weston's control, Mr. Moreau states in his affidavit

---

[2] It is undisputed that Moreau owns the vessel he alleges he was injured on; however, the evidence suggests that Moreau was working for Weston, not himself, at the time of his alleged infection.

9

that Weston instructed him as to how to operate and maintain the vessel.[3]

Applying the additional factors from Ruiz, and resolving all disputed facts in Moreau's favor, the record indicates that: Weston provided fuel, food, lodging, and equipment necessary to perform the work; there was no understanding or meeting of the minds between Native Adventures and Weston as to the parties' relationship; Mr. Moreau was employed "over a considerable length of time" from May 2010 until December 2010;[4] the scientific testing being conducted was the work of Weston, the temporary employer; Weston was obligated to pay Moreau for his work on the vessel; Weston had the power to fire Moreau from his piloting duties.  For these reasons, Weston has not met its burden in showing there is "no reasonable possibility" Moreau could establish a Jones Act claim. See Hufnagel, 182 F.3d at 345 (citing Burchett, 48 F.3d at 176).

---

[3] The Charter Party is unhelpful in deciding who had the responsibility to maintain and operate the vessel.
[4] See Williams v. Arco Oil & Gas, Inc., No. 89-5201, 1990 WL 178722, at *2 (E.D. La. May 16, 1990) (finding six months was a significant amount of time).

B.

Weston contends that this case is removable under the federal officer removal statute. The plaintiffs counter that the federal officer removal statute does not apply to Weston because it has not shown a causal nexus between its actions under color of federal office and the plaintiffs' claims. The Court agrees.

To be covered by the federal officer removal statute, a defendant must show: (1) that it is a person within the meaning of the statute, (2) that it has "a colorable federal defense," (3) that it "acted pursuant to a federal officer's directions," and (4) "that a causal nexus exists between [its] actions under color of federal office and the plaintiff's claims." Zeringue v. Crane Co., 846 F.3d 785, 789 (5th Cir. 2017). The only disputed element is whether there is a causal nexus between Weston's actions under color of federal office and the plaintiffs' claims.

Weston asserts that there is a causal nexus because its actions were directed and overseen by the federal government, through the EPA. It asserts that the contract with the EPA provided the specifications, policies, standards and procedures to be used during the performance of the contract. Weston submits that it could not implement any safety procedure without the EPA's approval. Thus, it concludes, there is a causal nexus between its

actions, controlled and directed by the EPA, and the plaintiffs' claims. The plaintiffs counter that there is no casual nexus because Weston was free to adopt the safety measures that would have prevented Moreau's injuries. The Court agrees.

Mr. Moreau asserts that he was injured as a result of Weston's failure to: (i) warn of the presence of bacteria on the boat, (ii) properly train him and the rest of the crew to avoid the bacteria, and (iii) to adopt other preventative procedures, such as providing protective clothing. The Fifth Circuit instructs that the existence of a causal nexus turns on the nature of the particular claim. See Savoie v. Huntington Ingalls, Inc., 817 F.3d 457, 463-65 (5th Cir. 2016)(finding causal nexus requirement met for strict liability claim but not for negligence claims because negligence claims challenged a discretionary function of defendant while the strict liability claims, based solely on the use of asbestos, challenged a government specification over which defendant had no control).

Here, the parties focus on the plaintiffs' claims that sound in negligence.[5] Notably, there is nothing in the record indicating

---

[5] Weston does not mention how the plaintiffs' unseaworthiness claim might satisfy the casual nexus requirement, and the Court declines to advance the argument for Weston. See Bartel v. Alcoa S.S. Co., 805 F.3d 169, 174 (5th Cir. 2015)(refusing to consider strict liability-causal nexus argument made for the first time during oral argument). The Court simply notes that a ship's seaworthiness

that Weston was prevented from adopting the safety measures that Mr. Moreau claims would have prevented his alleged infection. See Bartel, 805 F.3d at 174 (Defendants, "at a minimum, were free to adopt the safety measures the plaintiffs now allege would have prevented their injuries.").

The contract between Weston and the EPA states that Weston "is responsible for the safety of its employees and subcontractor employees on site." Further, it states "the contractor [Weston] retains the right to employ more stringent health and safety requirements for itself and its subcontractors." Although approval may have been needed, the government contract defeats defendant's argument that the EPA prevented Weston from taking the protective measures that Mr. Moreau alleges might have prevented his infection. Weston had discretion over health and safety mandates. Savoie, 817 F.3d at 463. Thus, Weston has failed to persuade the Court that the causal nexus requirement is met. Id.

Accordingly, because Weston failed to carry its heavy burden to show that the plaintiffs' Jones Act claim was fraudulently pleaded, and because Weston failed to show that the federal officer

---

is a non-delegable duty of the vessel *owner*, here, it seems, Mr. Moreau. See Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549 (1960). All the more reason why the Court need not consider issues not raised by the parties.

removal statute is triggered, the plaintiff's motion to remand is GRANTED; the case is hereby remanded to Civil District Court for the Parish of Orleans.[6]

New Orleans, Louisiana, July 26, 2017

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[6] The Court notes the unresolved tension in the case literature between non-removability of Jones Act claims and the federal officer removal statute. As well as the tension between the savings to suitors clause and the federal officer removal statute. However, because the Court finds that the federal office removal statute is not implicated on this record, the Court need not reach those issues. Additionally, because the defendant's invocation of this Court's diversity jurisdiction assumed that the plaintiffs' Jones Act claim was fraudulently pleaded, the Court need not reach whether this Court would have diversity jurisdiction, or whether maritime claims are removable when diversity jurisdiction exists.